UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

ARTHUR L. STARKS,             )
                              )
           Plaintiff,         )
                              )
    vs.                       )        1:05-cv-1192-SEB-VSS
                              )
ELI LILLY,                    )
                              )
           Defendant.         )

**Entry Discussing Motion for Summary Judgment
Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment, filed on April 3, 2006, must be **granted.**

**I. Background**

As used in this Entry, "Starks" refers to the plaintiff, Arthur Starks, and "Lilly" refers to the defendant, Eli Lilly and Company.

Starks was formerly employed by Lilly. Starks alleges in this action that his employment was terminated because of his race. He alleges a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Lilly seeks resolution of Starks' claim through the entry of summary judgment.

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

## II. Discussion

**A. Findings of Fact**

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motion for summary judgment.

Lilly hired Starks in November 1998. Starks worked throughout his employment with Lilly as a Process Operator ("Operator") manufacturing Insulin. That process is subject to Food and Drug Administration ("FDA") regulations as well as internal Lilly policies, procedures, and guidelines.

To run the process, Operators must follow specific procedures and instructions set forth on a manufacturing ticket. It is critical that Operators follow the ticket perfectly because failure to do so can cause a product lot to fail, cost Lilly millions of dollars, and create FDA issues.

Starks received training on how to follow the ticket and run the process when he was first hired and throughout his employment with Lilly. Starks also received training on how to deal with Operator errors and unexpected mechanical issues and disruptions in the manufacturing process, including Lilly's policy and expectation that process-related incidents are to be reported to a supervisor.

In February 2002, Starks received a document confirming his team's expectations, including the requirement that any non-compliance with or inaccuracies discovered in process procedures or manufacturing tickets be brought to a supervisor's attention.

Lilly follows a progressive discipline model which includes steps of verbal warning, written warning, probation, and separation. In February 2002, Lilly issued Starks a verbal warning for failing to comply with team expectations based on his failure to provide advance notice of the need to be absent, work through scheduled shift hours, and use personal protective and safety equipment and for conducting himself in a manner that required constant monitoring, oversight, and coaching to maintain his performance at an acceptable level.

In August 2002, Lilly issued Starks a written warning for being away from his process without notification or approval from supervision, failing to comply with team expectations in terms of call-ins prior to shift and working scheduled shift hours, and absenteeism.

In August 2003, Lilly placed Starks on probation for failing to comply with team expectations in terms of call-ins and lateness, failing to follow instructions or good documentation practices, signing off on a manufacturing ticket to indicate that a process step had been completed when it in fact had not been completed, and conducting himself in a manner that required constant monitoring, oversight, and coaching to maintain his

performance at an acceptable level. The probation document confirmed Starks' understanding of Lilly's policy, which was that he would not be eligible for a second probation in the three years that followed. Starks successfully completed his probation but received another written warning for absenteeism in May 2004.

On January 28 or 29, 2005, Starks was performing a step in the manufacturing process when he heard a funny noise in a pump being used in the process. Starks discovered that the pump was not pumping liquid as it was supposed to, and the pump shut down for several minutes. Starks did not report the pump issue to his supervisor or document it in any way.

On Starks' next scheduled shift three days later, he was called to Human Resources for a meeting with Human Resources Representative Ron Bray, his Team Leader Wayne Curnutt, and his Supervisor Bob Shepard. Starks was asked if anything had happened in terms of the process during his previous shift. Starks said he did not remember anything and did not mention that the pump had shut down.

When confronted directly about the pump, however, Starks remembered that the pump had shut down during the process and admitted he had not reported that to his supervisor. Lilly determined that Starks had failed to report a process-related incident as he had been trained to do and that he had been dishonest when confronted regarding the situation, so it decided to issue him a step of discipline under its progressive discipline model. Because Starks was on written warning at the time and was not eligible for a second probation within a three-year period under Lilly policy due to his previous probation, his employment was terminated.

In August 2003, Lilly issued Process Operator Kathy Sparks ("Sparks") a step of progressive discipline for unacceptable work performance based on a process-related incident. Based on where Sparks was in Lilly's progressive discipline model at the time, she received a written warning. In August 2004, Lilly issued Process Operator Mike Williams ("Williams") a step of progressive discipline for unacceptable work performance based on a process-related incident. Based on where Williams was in Lilly's progressive discipline model at the time, he was placed on probation. Sparks and Williams are Caucasian and worked in the same group as Starks.

### B. Conclusions of Law

Title VII of the Civil Rights Act of 1964, as amended, prohibits "employers" from discriminating against individuals on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "It is well-established that a plaintiff in a Title VII case may proceed under a direct or indirect method of proof." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004); see also *Stone v. City of Indianapolis Public Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

Direct evidence is evidence that, if believed by the trier-of-fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997). The direct evidence must show that the defendant said or did something indicating discriminatory animus with regard to the specific employment decision in question. *Id.* In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rogers,* 320 F.3d at 753 (internal quotation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" *Rhodes v. Ill. Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)). "That circumstantial evidence, however, 'must point directly to a discriminatory reason for the employer's action.'" *Id.* (quoting *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003)).

Under the alternative method, in *McDonnell Douglas,* the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993). The test consists of three steps. First, the plaintiff must establish a *prima facie* case of discrimination. Second, once the *prima facie* case is established, the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. Finally, if a legitimate, non-discriminatory reason is offered, the plaintiff must come forward with evidence to show that the stated reason is not the true one, but only a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973); *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 401 (7th Cir. 1999).

Because Starks has not provided any direct evidence of discrimination on the basis of race, he must proceed under the burden-shifting test established in *McDonnell Douglas. Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).[1] The elements of a *prima facie* case of discrimination are: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the employer treated at least one similarly situated employee not in his protected class more favorably. *Little v. Ill. Dep''t. of Revenue*, 369 F.3d 1007, 1011 (7th

---

[1]Starks alleges in his deposition that sometime in 2003 his former Team Leader Chris Mitchener told Starks that Mitchener "had prejudice." Even if Mitchener did make the remark about having prejudice, it is not direct evidence of discrimination because it was made two years prior to the incident at issue, it was not made by a decision-maker nor did it concern an adverse employment action. See *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 728 n. 12 (7th Cir. 2004); *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) ("Racial epithets or stray remarks may be direct or circumstantial evidence of intentional discrimination if they are sufficiently connected to the employment decision, i.e., made by the decisionmaker, or those who influence the decisionmaker, and made close in time to the adverse employment decision.").

Cir. 2004). With respect to this last element, it is the plaintiff's burden to present admissible evidence of a specific employee outside his protected class who was treated more favorably than he, *Adams v. Wal-Mart Stores, Inc.,* 324 F.3d 935, 939 (7th Cir. 2003), and that employee must be "directly comparable to [him] in all material respects." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002).

In a case such as this where the stated reason for Starks' termination of employment was poor performance, it is not necessary to determine whether he was meeting Lilly's legitimate expectations. "In those situations, there is no question that the employee failed to meet his employer's expectations." *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 728 (7th Cir. 2004) (where plaintiff claims he was subject to disparate punishment, the second and fourth prongs of *McDonnell Douglas* "merge"). Rather, the analysis focuses on whether Starks received "dissimilar - and more harsh - punishment than that received by a similarly situated employee who was outside the protected class." *Id.*

Starks speculates that Caucasian Process Operators Bruce Myers, Tim Collins, and Dave Barr were involved with process-related incidents but were not disciplined. He presents no evidence, however, to support this argument. Starks' burden to set forth specific facts to show that a genuine issue exists cannot be met with conclusory statements or speculation, but only with appropriate citations to relevant admissible evidence. *See* Local Rule 56.1. A plaintiff's own unsubstantiated assertions are insufficient to defeat a motion for summary judgment. *See Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 939 (7th Cir. 1997). Starks has not presented any evidence that another employee, not in his protected class, failed to report a process disruption incident and was not disciplined. Accordingly, he has failed to present evidence sufficient to create a genuine issue of material fact.

Lilly has stated legitimate, non-discriminatory reasons for the termination of Starks' employment. Starks failed to report a process-related incident pursuant to Lilly policy. Lilly personnel also believed that Stark was dishonest when confronted about the incident. Lilly did not decide to terminate his employment based on that single incident. Rather, Lilly decided to issue a step of progressive discipline and because of his prior discipline history and having been on disciplinary probation within the previous three years, the next step of progressive discipline was termination of his employment.

To show pretext, Starks must come forward with evidence that the stated reasons for his termination were not the true reasons. "Pretext requires more than showing that the decision was mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Farrell v. Butler University*, 421 F.3d 609, 613 (7th Cir. 2005) (internal quotation omitted). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir.2000). The court does "not sit as a superpersonnel department that will second guess an employer's business decision" even if that decision was baseless or mistaken, so long as the reason for the decision was honestly believed by the employer. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001). Starks

argues that he was not "dishonest" during the meeting with Human Resources and his Team Leader and Supervisor. He states that the meeting was three days after the incident and he simply did not remember the pump incident, which lasted three or four minutes, when first asked about it. Even if Starks had simply forgotten about the incident, he has not presented evidence showing that Lilly did not honestly believe that he had been dishonest. Moreover, Starks does not dispute that Lilly gave him a step of discipline because the pump incident was not properly reported. This resulted in his termination. Starks has not shown that Lilly did not honestly believe the reasons given for its decision. Accordingly, Lilly is entitled to summary judgment.

### III. Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted). "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993). Here, Starks has not come forward with evidence that establishes a *prima facie* case of discrimination, nor has he shown that Lilly's proferred reasons for its action were pretextual.

Accordingly, Lilly's motion for summary judgment must be **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 09/29/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana